E-FILED
Tuesday, 15 July, 2008  09:24:40 AM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## ROCK ISLAND DIVISION

| | | |
|---|---|---|
| SOPHIA MARESCA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07-4025 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

This matter is now before the Court on Plaintiff's Motion for Summary Reversal and the Commissioner's Motion for Summary Affirmance.  For the reasons set forth below, Plaintiff's Motion for Summary Reversal [#15] is GRANTED, and the Commissioner's Motion for Summary Affirmance [# 17] is DENIED.

## BACKGROUND

Claimant Sophia Maresca was thirty-one at the time of her administrative hearing. (R.  at 513.)  After dropping out of school in the ninth grade, Maresca earned her GED in 1995, and completed two years of college while incarcerated from 1999-2002.  (R. at 519-20.)  In the past, Maresca has been employed as a waitress and a telemarketer.  (R. at 521.)  She last worked in 2003 as a part-time receptionist, answering phones and taking messages.  (R. at 523.)

On June 12, 2003, Maresca filed an application for Supplemental Security Income ("SSI"), alleging disability beginning December 1, 1993.  (R. at 18.)  Her application was denied both initially and on reconsideration.  (*Id.*)  Maresca requested a hearing before an Administrative Law Judge ("ALJ").  (*Id.*)  A hearing was held before ALJ John P.  Johnson on September 28, 2005, at which Maresca, who was represented by counsel, and vocational expert Carma Mitchell appeared and gave testimony.  (R. at 535.)

Maresca testified that she was diagnosed with post traumatic stress disorder and melancholia when she was eight years old resulting from physical, emotional and sexual abuse by her mother.  (R. at 515-16.)  She testified that these issues have persisted to the present time and result in an inability to concentrate and an inability to deal with being in public.  (R. at  516.)

Maresca further claimed to experience a high level of anxiety, as well as difficulties being around crowds of people and remembering to do things that must be done.  (*Id.*)  She also testified that while working as a waitress, she began having seizures and panic attacks, which twice required her to receive treatment at the emergency room.  (R. at 523.)  At the time of the hearing, Dr. Ralph Singfort had diagnosed Maresca with post-traumatic stress disorder, anxiety, depression, and anti-social behavior.  (R. at 527.)  Due to these problems, she claims to have irritability, sleeplessness, restlessness, and anxiety.  (*Id.*)  She is currently taking Seroquel but has been on and off a variety of different medications throughout her life, including Zoloft, Abilify, Trazodone, and Geodon.  (R. at 516-17.)  The record indicates that her medication has been altered, increased, decreased, and terminated on different occasions throughout the time in question.  She testified that she had no physical problems with working, walking, standing, sitting, or other things of that

sort.  (R. at  524.)  However, she claims to have difficulty remembering day-to-day things. (*Id.*)     Maresca testified that she regularly attends bible study and other three-hour classes, attends Alcoholics Anonymous/Narcotic Anonymous meetings, and occasionally attends worship services. (R. at 532-33.)  Despite a difficulty motivating herself to attend those classes, she testified that she feels okay while present.  (R. at 534.)  Outside of those activities, Maresca did not indicate any hobbies or activities.  (*Id.*)  Maresca testified that she has a valid drivers license and drives herself to the grocery store and appointments. (*Id.*)  However, she stated that she prefers that others drive her places because she gets upset easily behind the wheel and is subject to panic attacks while driving.  (R. at 535.)

The ALJ had a variety of medical and psychological information to consider, including opinions from at least three medical professionals and one social worker.  A brief summary of the relevant evidence is provided.

In August 2002, while Maresca was incarcerated, she was evaluated by Stephen Paul Singley, a Medical Assistant appointed by the Illinois Disability Determination Services. (R. at 311.)  Singley reported that Maresca self-reported a medically-confirmed bipolar diagnosis as well as a long history of behavioral and emotional difficulties.  (*Id.*) Maresca also reported taking no medication since being released from custody in 2002 because she could not afford them.  (*Id.*)  Singley reported that basic abstractions and personal judgments did not appear to be significantly impaired at the time.  (*Id.*)  Singley found that Maresca suffers from (1) poly-substance abuse/dependency, in remission, (2) bipolar disorder, and (3) borderline personality disorder.  (R. at 314.)  He noted that Maresca claimed to be slipping and he opined that without medication, Maresca may not have much of a chance at remaining stable.  (*Id.*)

- 3 -

On April 2, 2003, Maresca was examined by Dr. James Nielsen, a psychiatrist at Dwight Correctional Center.  (R. at 357.)  Dr. Nielsen found Maresca suffered from (1) bipolar disorder, (2) depression, (3) borderline personality disorder with anti-social traits, and (4) seizure disorder.  (*Id.*)  Dr. Nielsen noted that Maresca was instructed on the importance of certain outreach programs and prescribed medications.  (*Id.*)

Maresca's treating physician throughout the relevant time period was Dr. Ralph Saintfort.  (R. at 19.)  Maresca began seeing Dr. Saintfort in October 2002.  (R. at 336.)  At that meeting, Maresca complained of being overwhelmed, being irritated with people at work, and having difficulties concentrating and multi-tasking.  (*Id.*)  Dr. Saintfort diagnosed Maresca with agitated major depression and substance abuse in remission.  (*Id.*)  In January 2003, Maresca began suffering from seizures, and Dr. Saintfort prescribed Dilantin and Klonopin to combat the seizures.  (R. at 337.)  In March of 2003, Maresca's visits with Dr. Saintfort ended as a result of her parole violation after which she was incarcerated at Dwight Correctional Center until May 2003.  (R. at 339.)

In May 2003, Maresca was released from Dwight.  (*Id.*)  The record shows that Maresca returned to see Dr. Saintfort in May 2004 and met with him monthly from that point forward.  (R. at 432-33, 439-42.)  She reported a mixture of both positive and negative personal feelings during those meetings and was regularly prescribed medications to deal with the wide variety of medical conditions from which she suffered including anxiety, being overwhelmed, apathy, fatigue, and difficulty sleeping.  (*Id.*)  In March 2005, Dr. Saintfort diagnosed her with major depressive disorder, post-traumatic stress disorder, and anti-social personality disorder.  (R. at 437.)

In May 2005, Maresca again met with Dr.  Saintfort and reported that her mood had

improved since she moved into her own apartment. (R. at 432.) She expressed optimism and hope, and Dr. Saintfort observed that she appeared goal-driven and motivated. (*Id.*) She noted she was looking for employment and felt much better. (*Id.*) However, at a final visit in July 2005, Maresca indicated that she felt, "increasingly tense, on edge, and unable to relax." (R. at 449.) The doctor reported her, as "sad, tense, spontaneously tearful, withdrawn, and passive." (*Id.*) As a result of these symptoms, Dr. Saintfort adjusted Maresca's medication and rated her Global Assessment of Functioning (GAF)[1] as moderate to severe. (*Id.*)

The final individual who evaluated Maresca was licensed social worker Michelle Hyman. (R. at 515.) Hyman saw Maresca several times from May 2005 to September 2005. (R. at 427-31, 445-49.) Hyman rated Maresca's GAF as moderate. (R. at 446.) Hyman also noted that Maresca's anxiety had increased and resulted in a few panic attacks. (R. at 427-31.) Hyman noted that despite the positive direction of Maresca's life as reported in previous meetings, Maresca was "more stressed than ever" and was increasingly irritable with a noted short fuse. (R. at 428.)

Based on this meeting, Hyman prepared a Residual Functional Capacity Questionnaire (RFC) in which she opined that Maresca had a marked impairment in several areas. (R. at 427-29.) According to this report, Maresca had a marked degree of impairment in (1) her ability to relate to other people, (2) her ability to maintain attention for extended periods of two hour segments, (3) her ability to maintain regular attendance and be punctual within customary tolerance, (4) her ability to work in coordination with or

---

[1]The GAF Scale is used to track functioning ability of an individual's psychological and occupational functioning.

proximity to others without being unduly distracted by them, (5) her ability to make simple work-related decisions, (6) her ability to complete a normal workday and work week without interruption from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, (7) her ability to accept instructions and respond appropriately to criticism from supervisors, and (8) her ability to get along with co-workers or peers without unduly distracting them or exhibiting behavior extremes.  (*Id.*)

On February 8, 2008, the ALJ denied Maresca's SSI clam because he found she was able to perform at least light work and thus was not disabled.  Maresca requested the Appeals Council review the ALJ's decision on February 21, 2006.  On May 19, 2006 the Appeals Council denied the request for review, making the ALJ's decision a final decision of the Commissioner.  This case followed and now is fully briefed. In her appeal, Maresca alleges the ALJ's decision is both insufficient and not supported by substantial evidence in the record.  In alleging several legal and factual errors committed by the ALJ, Maresca argues that the ALJ erred when he gave no weight to the opinion of the treating social worker, Michelle Hyman, and that the ALJ erred in his credibility determination of Maresca. This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g) because the Commissioner of Social Security has issued a final decision.

**DISCUSSION**

To qualify for SSI, a claimant must show that his or her inability to work is medical in nature and that he or she is totally disabled**.** 20 C.F.R.  § 416.972(a).  Economic conditions, personal factors, financial considerations, and attitudes of employers are irrelevant in determining whether a claimant is eligible for disability benefits.  *See* 20 C.F.R. §§ 404.1566, 416.966.  The establishment of disability under the Act is a two-step process. First, the claimant must suffer from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382(c)(a)(3)(A).  Second, there must be a factual determination that the impairment renders the claimant unable to engage in any substantial gainful employment.  *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980).  That factual determination is made by using a five-step test.  *See* 20 C.F.R. §§ 404.1520, 416.920.

The five-step test is examined by the ALJ, in order, as follows:

> (1) is the claimant presently unemployed; (2) is the claimant's impairment "severe"; (3) does the impairment meet or exceed one of the list of specified impairments; (4) is the claimant unable to perform his or her former occupation; and (5) is the claimant unable to perform any other work within the national economy? An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the claimant is disabled.  A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

[*Garfield v. Schweiker*, 732 F.2d 605, 607 n.2 (7th Cir. 1984).] The claimant has the burdens of production and persuasion on steps 1 through 4; however, once the claimant shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment.  *Tom v. Heckler*,

- 7 -

779 F.2d 1250, 1253 (7th Cir. 1985).

The Court's function on review is not to try the case de novo or to supplant the ALJ's finding with the Court's own assessment of the evidence. *Pugh v. Bowen*, 870 F.2d 1271, 1275 (7th Cir. 1989).

The Court must only determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). In determining whether the ALJ's findings are supported by substantial evidence, the Court must consider whether the record, as a whole, contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420 (1971). Credibility determinations made by the ALJ will not be disturbed unless the finding is clearly erroneous. *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S. Ct. 1504 (1985); *Imani v. Heckler*, 797 F.2d 508, 510 (7th Cir. 1986)

**I. Claimant's Credibility**

Because hearing officers are in the best position to see and hear the witnesses and assess their forthrightness, this Court gives them special deference in the area of credibility findings. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). Thus, the Court will reverse an ALJ's credibility determination only if the claimant can show it is patently wrong. *Id.*

In this case, it appears that the ALJ based his finding that Maresca's credibility is compromised on a variety of factors. Among these factors, the ALJ found that Maresca was not forthright about the number of times she was incarcerated. (R. at 21-22.) The ALJ noted that she testified in her hearing that she had been incarcerated at least two times, but the record indicates she had previously reported one incarceration. In an August 2002

- 8 -

report prepared by Maresca's medical assistant Paul Singley, Maresca admitted to one incarceration from 1999-2002, omitting her previous incarceration in the early 1990s. (R. at 312.) This is sufficient to call her forthrightness into question.

Furthermore, the ALJ noted that when Maresca is compliant with her prescribed medication and medical treatment, her condition improves. (R. at 22. He also noted that there are times when Maresca chooses not to take medication that may help her improve. (*Id.*) The record in this case indicates that there are times when Maresca does not follow her prescribed medical regime. It is true that the reasons vary from an inability to afford the co-pay, refusal for one reason or another, or because she was incarcerated. However, this Court's standard for reviewing credibility determinations does not permit the Court to relitigate the facts as they were presented to the ALJ. There are at least some references in the record indicating that Maresca's condition improved when she complied with her medical regime.

Accordingly, the ALJ's credibility determination is not patently wrong.

## II. Determination of Disability

In reaching a conclusion, the ALJ may not ignore an entire line of evidence that runs contrary to his finding but must "articulate at a minimal level the analysis of the evidence" to permit an informed review. *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2000). In *Zurawski*, the ALJ determined a claimant had the RFC to do light work despite a MRI showing a bulged disk in claimant's shoulder. *Id.* The Seventh Circuit reversed the ALJ's decision because the ALJ failed to explain why evidence in the record, which was favorable to the claimant, was overcome by the evidence from two sources on which she relied. *Id.* at 889. Although the ALJ need not address every piece of evidence or testimony, the

*Zurawski* Court notes that the ALJ's analysis must provide some glimpse into the reasoning behind a decision to deny benefits. *Id.*; *see also Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984).

Furthermore, the Seventh Circuit has instructed on numerous occasions that the ALJ's decision must build a logical bridge between the evidence he purports to examine and the conclusions he reaches based on that evidence. *See, e.g.*, *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996.) A logical bridge is not built when the ALJ's decision discredits allegations or statements in the record without explanation following a conclusory statement they have been considered in their entirety and then discredit them without explanation. *Powers* 207 F.3d at 435. Similarly, in determining a claimant's RFC, the Seventh Circuit has instructed that the evidence of the record must be substantial as viewed in its entirety, and not merely in isolation. *Zblewski*, 732 F.2d at 78-79.

**A. ALJ's Decision to Discredit Hyman's Notes**

The ALJ discredited Hyman and then found Maresca not disabled because he indicated she could perform certain jobs. The ALJ concluded that Hyman's notes from a July 2005 meeting with Maresca contradicted the notes from Maresca's May 2005 meeting with her treating physician Dr. Saintfort. That conclusion appears to be substantial only in isolation and fails to be substantial when the evidence is viewed in light of the entire record. For example, the ALJ does not explain why he gave no weight to a July 2005 meeting between Maresca and Dr. Saintfort, in which Maresca complained of the same type of problems reported by Hyman after the July 2005 meeting. Furthermore, the ALJ provides

no reasoning to explain why one particular meeting in May 2005 is given such overwhelming weight over the July 2005 report and other reports indicating Maresca's continuing psychological problems. As in *Zblewski*, the ALJ may have had strong grounds on which to reject Maresca's evidence, but his failure to give a reasoned explanation for giving overwhelming weight to one meeting between Maresca and Saintfort in May 2005, especially when a meeting just two months later between the same individuals showed a markedly different result, prevents this Court from upholding the ALJ's decision.

In *Bauzo v. Bowen*, 803 F.2d 917 (7th Cir. 1986), the ALJ and Appeals Council found the claimant not disabled because of a negative disability report set forth by a consultative examination. *Id.* at 922. The Seventh Circuit noted how the Appeals Council ignored much of the same doctor's positive assessments of disability. *Id.* The *Bauzo* court noted that its finding that there was a lack of substantial evidence was based on the Appeals Council's failure to articulate the basis for adopting the part of Dr. Bacalla's assessment favorable to the Appeal Council's decision and rejecting the unfavorable part. *Id.* at 922-23. Like the Appeals Council in *Bauzo*, the ALJ discredits Hyman and implicitly credits one report of Dr. Saintfort favorable to the ALJ's ruling, but does not explain why the reports of Dr. Saintfort unfavorable to his decision were summarily rejected.

Additionally, the record notes that Maresca suffers from a range of mental illnesses ranging from bipolar disorder to severe depression. In *Kangail v. Barnhart*, 454 F.3d 627 (7th Cir. 2006), the Seventh Circuit held that a person can have a disabling illness and still act normal during medical office visits because bipolar disorder is episodic. *Id.* at 633. As discussed in *Kangail*, the differences between the May report by Dr. Saintfort and the July report by Hyman may not actually contradict because of the episodic nature of Maresca's

mental disorder. *Id.*

Accordingly, the Court cannot conclude that substantial evidence supports the ALJ's determination.

## B.  Maresca's Daily Activities

The Seventh Circuit cautions the Social Security Administration against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home.  *See Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006).  In *Mendez*, the claimant allegedly suffered from depression and anxiety, and the ALJ found the claimant not disabled because she could care for her children at times, cook, clean, do laundry, shop, take care of her personal needs, and did not have trouble getting along with family members, neighbors, or friends.  *Id.* at 363.  The *Mendez* Court stated that the pressures, the nature or work, the flexibility in the use of time, and other aspects of the working environment, are dramatically different between home and office type of paid work. *Id.*  As in *Mendez*, Maresca's ability to shop once a month, occasionally drive herself places, and attend relapse courses and bible studies are different from the type of activity required for continuous employment.

The Commissioner argues that the activities in question are different from other cases in the Seventh Circuit because Maresca's activities are rather continuous.  The Commissioner argues that Maresca's employment search demonstrated she is not disabled.  The ALJ asserted that Maresca's daily activities coupled with her employment search demonstrate she is not disabled, but this does not accord with Seventh Circuit case law regarding finding an individual disabled based on daily activities.  Specifically, in *Henderson v. Barnhart*, 349 F.3d 434 (7th Cir. 2003), the claimant both looked for work and

- 12 -

found it, but the Seventh Circuit held that a person may be employed yet be disabled. *Id.* at 435; *see also Wilder v. Apfel*, 153 F.3d 799, 801 (7th Cir. 1998) ("[E]mployment is not proof positive of ability to work, since disabled people, if desperate (or employed by an altruist), can often hold a job.").

Additionally, other circuits have held that claimants should not be punished for attempting to overcome disabling mental conditions. *See Wilcox v. Sullivan,* 917 F.2d 272, 277 (6th Cir.1990) ("[C]laimant should not be penalized because he had the courage and determination to continue working despite his disabling condition."); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."). Furthermore, other circuits have noted that when claimant's attempt to attend school or worship services to lead a normal life, such activities should not be used against them in their claim for disability. *See, e.g.*, *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir.1998); *Parish v. Califano*, 642 F.2d 188, 191 (6th Cir. 1981).

Considering the controlling law regarding mental disabilities, the Court cannot concluded that substantial evidence supports the ALJ's determination that Maresca can be employed.

## CONCLUSION

For the reasons set forth herein, the court finds that the ALJ's decision is not supported by substantial evidence. Plaintiff's Motion for Summary Reversal [#15] is GRANTED, and the Commissioner's Motion for Summary Affirmance [#17] is DENIED. The case is remanded under sentence four of 42 U.S.C. § 405(g), for the ALJ to consider Dr. Saintfort's July 2005 opinion and Maresca's ability to work and provide the necessary

explanation of the record in its entirety, or to conduct additional proceedings the Commissioner deems appropriate.  The Clerk is directed to enter final judgment in favor of the Plaintiff and close this case.

ENTERED this 15th day of July, 2008.


s/ Michael M. Mihm
Michael M. Mihm
United States District Judge